TRAILWAYS BUS SYSTEM, INC., Appellant,

v.

George Albert HAMAUEI, Appellee.

No. 13–82–149–CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 3, 1983.

John C. Holmgreen, Jr., Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

J. Norman Thomas, Harris, Cook & Browning, Corpus Christi, for appellee.

1. A graphoanalyst studies handwriting for the purpose of *character* analysis. They are not

Before BISSETT, UTTER and GONZALEZ, JJ.

## OPINION

GONZALEZ, Justice.

This is an appeal in an employment contract case. After a jury trial, a money judgment was rendered against Trailways for the wrongful discharge of Hamauei, one of their employees. Trailways asserts that error was committed in that Hamauei did not pursue his contract remedies and that there is no evidence and insufficient evidence to support the jury verdict. We affirm.

In 1974, Hamauei was hired by Trailways as a porter in their Corpus Christi station. He was later promoted to an express agent, the position he held at the time of his dismissal. In November or December 1978, someone left an anonymous obscene note directed at the management on the desk of the express department supervisor. The branch manager decided that the author of the note would be fired. He obtained writing samples from all sixteen employees of that department and submitted them to a graphoanalyst.[1] This person examined the samples and concluded that Hamauei was the author of the note. Based on this opinion, on January 24, 1979, Hamauei was fired. He denied writing the note.

The jury found that Trailways terminated Hamauei's employment without sufficient cause, that he was able and willing to perform his job after the termination, and that the difference between the amount of money he would have earned had he not been terminated and the amount of money he should have earned since the termination had he reasonably sought suitable employment was $22,227.20. Based on these findings, the trial court awarded Hamauei a judgment for this amount plus attorney's fees against Trailways. Trailways perfected this appeal.

"questioned document" experts as that term is used in legal circles.

In their first point of error, Trailways alleges that the trial court erred in failing to grant their Motion for Judgment and for judgment N.O.V., for the reason that Hamauei failed to pursue his contract remedies contained in his union contract.

## CONTRACT REMEDIES

The record reflects that Hamauei was a member of a union. The collective bargaining agreement entered into between Continental Bus System, Inc. and the "Terminal Employees Steering Committee" provided in part:

### ARTICLE VIII

### DISCIPLINE

Section 4. Any employee disciplined or discharged shall have the right of appeal as outlined in the grievance procedure set forth in Article IX.

### ARTICLE IX

### GRIEVANCE PROCEDURE

Section 1. Any employee who believes that they have been dealt with unjustly under these rules and regulations or that discipline has been excessive, or that they have failed to receive proper compensation for work performed, will have ten (10) days from the date that the alleged offense or error in pay occurs in which to take same up with their Terminal Manager or Branch Manager for discussion and settlement. This may be done in the company of a member of the Steering Committee if the employee so desires. In the event the Terminal Manager or Branch Manager and employee are unable to satisfactorily resolve the matter, the employee may appeal the handling to the General Manager for final processing. This appeal must be made within ten (10) days from the date of the Terminal Manager's or Branch Manager's decision and must bear the written endorsement of both the employee and the Steering Committee representative. The General Manager, or his designated Representative, will then set a time and place for further discussion of the matter which must be within fifteen (15) days from the date of the employee's appeal to the attention of the General Manager, except that either the employee or the General Manager, or his designated Representative, shall have the right of one (1) postponement of not more than ten (10) days, in the event of circumstances making inconvenient or impossible the handling of the appeal within fifteen (15) days as mentioned. Section 2. All evidence must be presented in writing to the General Manager or his designated representative. The General Manager will have thirty (30) days from date of last conference with employee and representative to render a final decision.

Generally, "Where there is a labor contract between a union and an employee which provides procedures for settlement of disputes between the employee and employer, an employee is not entitled to redress in the courts where he fails to exhaust the remedies under the contract." *Lindsey v. General Dynamics Corp.,* 450 S.W.2d 895 (Tex.Civ.App.—Waco 1970, no writ). *See also Swilley v. Galveston, H. & S.A. Ry.,* 96 S.W.2d 105 (Tex.Civ.App.—Galveston 1936, writ dism'd).

56 C.J.S., *Master and Servant* § 28(75) (1948) states:

Any requirement of the contract between the union and the employer ... under which the administrative proceeding or action at law is instituted, which is in the nature of a condition precedent, must be complied with before such a proceeding may be instituted before the labor relations board, or before an action at law may be brought, as the case may be, unless performance of the condition has been waived by defendant, or unless he is estopped to complain of its nonperformance.

■ In our case, Hamauei, in essence, pled that he had complied with the terms of the contract. Trailways filed a general denial and did not plead that Hamauei had failed to exhaust his administrative reme-

dies. Besides the general denial, Trailways pled that Hamauei was an hourly employee and that he could be fired at will. Therefore, we hold that Trailways has waived the condition precedent of exhaustion of contract remedies and/or that they are estopped from complaining of such nonperformance. See Tex.R.Civ.P. 54.

This notwithstanding, the record reflects that Hamauei substantially complied with the grievance procedures. After he was fired, Hamauei contacted his employee representative in order to arrange a meeting with the regional manager. No meeting was held. Subsequently, Hamauei contacted a lawyer who then wrote a letter to Steven Dawkins, Area General Manager for Trailways, stating that the grievance procedures were being pursued and requesting an appointment for further discussion of Hamauei's dismissal. In response to this letter, Hamauei received a letter from Dawkins stating that he felt it was inappropriate for Hamauei to be represented by an attorney at that point. In addition, Dawkins appointed Don Cheney as his authorized representative and requested a postponement of ten (10) days for further discussion of the matter. As required by the grievance procedure, the General Manager or his designated representative was to have set a time and place for further discussion of the matter. This was not done, and, thereafter, Hamauei filed this suit. Under these circumstances, we are of the opinion that if it was necessary for Hamauei to exhaust the grievance procedures set out in the contract, he substantially complied with them. Point of error number one is overruled.

■ In points of error two, three, and four, Trailways attacks by "no evidence" and "insufficient evidence" points, the jury's finding that they discharged Hamauei without sufficient cause. Our review of these points is controlled by well established rules of law. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

The record reflects these relevant facts: first, Hamauei was not at work the two days prior to the day that the note was discovered, and he denied writing the note; second, Constance Scott, the graphoanalyst that Trailways hired to determine who had written the note, had never conducted a similar handwriting comparison. Scott indicated that the more handwriting samples you have, the better, but failed to request more than the four words which were provided by Trailways. Additionally, Scott testified that there were two dissimilarities that she thought were outstanding between the note and Hamauei's writing sample. Finally, another employee tried to inform Trailways that Hamauei did not write the note; however, Trailways did not investigate further this possibility. Viewing these facts in the manner prescribed, we hold that there was sufficient evidence by which the jury could determine that Trailways terminated Hamauei's employment without sufficient cause. Points of error two, three and four are overruled.

In point of error number five, Trailways alleges that the trial court erred in overruling its objection to the testimony of one of Hamauei's witnesses, since the evidence was not relevant to any issue before the jury. The record reflects that Hamauei called Sergeant Ernest Wilson, an identification expert with the Corpus Christi Police Department, to testify concerning the methods used by Trailways' expert in determining who wrote the note. Wilson testified that he would not even have attempted to determine the author of the note if all he had to work with was the samples provided to Trailways' expert. Wilson also testified that graphoanalysis was not an exact science and that it was used more as a method of determining one's personality.

■ It is generally accepted that evidence is relevant only if it tends to establish the truth of a proposition material to the issue. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210 (1958); Braselton-Watson Builders, Inc. v. Burgess, 567 S.W.2d 24 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). We hold that it was not error for the trial court to allow Sergeant Wilson to testify. The jury could properly consider Wilson's testimony in considering whether

Trailways acted reasonably in relying solely on Scott's advice and, thus, whether they had sufficient cause to terminate Hamauei's employment. Point of error number five is overruled.

The judgment of the trial court is affirmed.