Nicolasa **RODRIGUEZ**, a Widow, et al., Appellants,

v.

**UNIVERSAL FASTENINGS CORPORATION, et al.,**
Appellees.

No. 13–88–078–CV.

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1989.

Arturo V. Ramirez, Armando Lopez, Lopez & Ramirez, Houston, Frank Costilla, Costilla & Stapleton, Brownsville, for appellants.

Arthur M. Glover, Jr., James B. Lewis, Hirsch, Glover, Robinson & Sheiness, John H. Boswell, Devon Decker, Boswell & Hallmark, Jimmy D. Ashley, Houston, William J. McCarthy, Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellees.

Before UTTER, KENNEDY and SEERDEN, JJ.

## OPINION

UTTER, Justice.

Nicolasa Rodriguez and her children appeal from a take-nothing judgment rendered in favor of Universal Fastenings Corporation and Bovay Engineers Inc., appellees, after a jury absolved both Universal and Bovay of any liability for the death of the husband and father Domingo Rodriguez. Appellants' points on appeal include challenges to the evidence supporting the jury's findings, the exclusion of evidence, and improper jury argument. We affirm the judgment of the trial court.

Domingo Rodriguez, a fifty-one year old construction worker, was killed in a construction accident on January 6, 1982, as a result of a fall from a concrete slab. At the time of his death, Rodriguez was employed by Industrial Contractors, which was a subcontractor involved in a project called the Waste System Facility Plan for the Public Utilities Board (PUB). Rodriguez was working on a lift station which was in the process of being built.

Rodriguez's survivors sued Universal Fastenings Corporation, Bovay Engineers, Inc., Pro–Kote, Melvin S. Umphenour, Jr., Irrigation Construction Co., Royce W. Huler, Idela Construction Co., Homer Scott, Industrial Contractors, Inc., and the Public Utilities Board of the City of Brownsville. Prior to the trial, appellants settled with all of the defendants except Pro–Kote, Umphenour and the appellees, Bovay and Universal. Appellee Bovay was the engineering firm which designed the lift station. Appellee Universal was the manufacturer of bolts which were used in the construction of a support system on the lift station job site.

The negligence of Bovay and Universal together with the settling defendants Idela and Irrigation were each submitted to the jury, which found that the conduct of Idela and Irrigation each contributed 50% to the occurrence in question. Idela and Irrigation were the general contractors on the job. The jury found no liability against either Universal or Bovay. The jury also answered negatively the issues submitted on appellants' products liability claims against Universal.

Appellants, by their first and second points of error, argue that the jury's answers to the issues that both Bovay and Universal were not negligent was without evidentiary support. In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

■ Appellants first complain of the jury's finding that Bovay was not negligent. Bovay Engineers prepared the plans and specifications for the project. Bovay also acted as resident project engineer for the PUB and had the general responsibility to inspect the project. According to their contract, Bovay was required to make periodic visits to the job site to observe the progress and quality of the executed work, and to determine generally that the work was proceeding according to the contract documents. The contract specifically provided that Bovay was to direct its efforts toward providing assurance for the owner that the completed project conformed to the requirements of the contract document.

Appellants' complaints against Bovay involve negligent failure to properly design and inspect the lift station which was being constructed. The lift station consisted of two concrete wells which were joined by a common wall. At the time of the accident, the floor slab and walls had been built. The workers were in the process of pouring concrete for the top slab when the accident occurred.

Appellants' expert testified that at the top of the well, no construction joints or "key joints" were shown on the plans. According to Pen Schneider, appellants' expert, the purpose of a joint is to provide a place to break the concrete pour. He testified that if the joint had been placed properly, there would have been no need for a wooden ledger to support the slab as it was being poured and the contractor would not have had to rely on its strength to carry the concrete load. Schneider said that it was the responsibility of the engineer to insure that the joint was placed.

Schneider also stated that a resident engineer should have noted that the contractors were installing wood supports rather than using scaffolding or shores as provided by contract. It was also his opinion that a resident engineer should have known that a two-by-six piece of wood was not heavy enough to carry the load of the concrete.

Bovay's position at trial was that its duty was to insure that the finished product complied with contract specifications. The contract, introduced in evidence, specified that the engineer [Bovay] was not responsible for the contractor's means, methods, techniques, sequences, or procedures of

construction, or the safety precautions and programs incident to them. Appellants' expert agreed that Bovay was not responsible for seeing that the work was done according to contract documents. According to the contract, the contractor, and not the engineer, was responsible for the design and construction of forms, and for insuring that they were adequately braced and supported.

Hayes Chapin, an engineer, testified that the plans and specifications for the lift station were not defective. He said that the station was built exactly to specifications. Even appellants' expert, Schneider, testified that he was not critical of specifications and design of the project.

Curtis Vick, president of C.L. Vick Construction Company, testified that the support system Industrial constructed was totally inadequate. The support system should not have been built without the contractor obtaining some sort of engineering advice. He also testified to the existence of a key joint which appellants' expert had found lacking. There was also evidence, including the parties' contract, that the contractor was responsible for the support forms.

After reviewing all of the evidence concerning Bovay's alleged negligence, we find that appellants have failed to prove as a matter of law that Bovay was negligent. Likewise, the jury's answer to the issues concerning Bovay was not against the great weight and preponderance of the evidence. We overrule appellants' first point of error.

■ Appellants' claim against Universal is based upon a theory that bolts manufactured by Universal and used on this construction project were defective. The bolts were called "thunderstuds." Appellants' primary complaints were that the thunderstuds contained significant amounts of impurities of manganese sulfide called "inclusions" which caused the bolt to be more brittle rather than ductile and that Universal failed to include any installation instructions or warnings in the bolt boxes for the use and benefit of the ultimate user.

Emilio Mendoza, a materials scientist, testified on behalf of appellants that he examined the microstructure of the bolts manufactured by Universal and determined that they both contained "inclusions." He described inclusions as materials which are different from the iron/carbon base of the bolt. These inclusions caused the bolt to be brittle. He opined that the materials used in the bolt caused the bolt to fail, which contributed to, or was totally responsible for, the accident. James Flanagan, a consulting engineer for appellants, testified that he examined thunderstuds manufactured by Universal. He said that he had never seen a manufactured item with a "stupid mistake" on the stress riser as was on the thunderstud.

William Truglio, Universal's expert, testified that Universal produces approximately 5 million anchor bolts per year. Universal has approximately ten percent of the market. He testified that one looking for anchor bolts would be hard pressed not to find an anchor bolt similar to the thunderstud. Truglio testified extensively concerning the standard used in the industry for selecting and evaluating the materials used in the industry.

Glen Ecord, a metallurgical engineer, testified that he examined several pieces of failed bolts as well as new bolts. He performed hardness tests which measured the resistance of metal indentation, which gives an estimation of the strength of the metal. He determined that the actual strength of the bolts involved in the accident ranged from 10,100 to 11,100 pounds. He also performed load and ductility testing on some anchor bolts. Ecord said that there was nothing wrong with the angle that was designed into the bolt from a metallurgical standpoint. Universal took the stress riser into consideration in their design of the bolt. Ecord tested the bolts for sulfur inclusions and determined that they had about 23% sulphur. Ecord determined that the studs in question were overloaded beyond their advertised strength and safety factor.

It is evident from the record that there was a battle of experts concerning whether

the bolts manufactured by Universal were defective. Clearly, appellants did not establish as a matter of law that the bolts were defective. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989).

There was sufficient evidence from which the jury could have determined that Universal did not manufacture a defective bolt. We do not believe that the jury's answer was against the great weight and preponderance of the evidence.

■ Appellants next assert that the warnings and instructions given by Universal were inadequate because they were contained in a catalog provided to distributors rather than on a box or on the bolt. The duty to provide a warning or furnish instructions for safe use arises when the product is established to be unreasonably or inherently dangerous in the absence of a warning or instruction for safe use. *Johnson v. Jones–Blair Paint Co.* 607 S.W.2d 305, 306 (Tex.App.—Eastland 1980, writ ref'd n.r.e.); *Hamilton v. Motor Coach Industries, Inc.*, 569 S.W.2d 571, 577 (Tex. Civ.App.—Texarkana 1978, no writ). It is undisputed in this case that Universal did not provide the installer of the bolt with a written instruction manual for safe use.

William Truglio testified that Universal's products did not carry installation instructions because the calculations are done by the person in charge of a project who can get needed data, such as shear and tensile strength, before deciding what type of bolt to purchase. He testified that the bolts are not something that the average person should be responsible for putting in. The placement of the bolt is something which must be engineered. He further testified that field interpretation of instructions is discouraged.

Appellants offered no evidence that government or industry standards required or encouraged the field installer to receive instructions on installations. No evidence was offered to show other manufacturers had "box top" instructions on installing their bolts. Appellants' evidence of inadequacy of warning was that the job foreman did not read and write too well and the person who drilled the holes spoke no English. This is not evidence supporting the proposition that the bolt manufacturers should have included written instructions on the bolt box. The only evidence presented was that these bolts were to be installed only after professional calculations had been made. Appellants failed to prove as a matter of law that the warnings and instructions for safe use were inadequate. Likewise, the jury's answer to the special issue was not against the great weight and preponderance of the evidence. We overrule appellants' second point of error.

■ By their third point of error, appellants argue that the trial court erred in excluding the video-tape deposition of Gerard Haynes, president of Industrial Contractors. Appellants contend that Haynes' deposition is relevant to show Bovay's incompetence in the performance of its administrative duties by approving what appellants call the general contractor's "noncompliance with federal and state laws and regulations."

In the deposition, which is of record by a bill of exception, Haynes indicated that when a project is funded by the federal government a certain amount of minority business involvement is required by contract. Pro–Kote was a minority contractor. Pro–Kote received the contract to build the lift station. Haynes agreed that Pro–Kote was a contractor which primarily performed painting and finishing work. Industrial Contractors performed work for Pro–Kote under a subcontract. Appellants allege that the "subsequent scheme of a sham MBE (minority business enterprise) represents a pattern and chain of events that point to critical errors and omissions by Bovay."

Evidence is relevant if it tends to establish the truth of a proposition material to the issue. *Trailways Bus System, Inc. v. Hamauei*, 660 S.W.2d 607, 610 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). A case should be reversed for an error in the exclusion of evidence only if it is very probable that the excluded evidence would have had a definite effect upon the jury's assessment of the case. Refusal to admit

evidence is proper in situations in which its admission would inject confusing collateral issues into the proceedings. *Silcott v. Oglesby,* 721 S.W.2d 290, 294 (Tex.1986).

Here, we find no error in the trial court's determination that Haynes' testimony was irrelevant and immaterial to the cause of the accident in question. The fact that the MBE requirements were improperly met or tampered with did not cause the accident, and would have only served the purpose of confusing and potentially prejudicing the jury. We overrule appellants' third point of error.

By their fourth point, appellants argue that the trial court erred in excluding the deposition of Melvin Umphenour, who was then president of Pro–Kote Company. Umphenour's testimony was that he became involved because the project needed more minority participation. Pro–Kote entered into a contract to build the lift station, and later contracted most of the work to Industrial, except for the painting.

Again, Umphenour's deposition, like Haynes' testimony relates to the problems concerning minority representation on the project. Likewise, we agree with the trial court that this evidence was irrelevant and immaterial to the issues before the jury. The trial court did not err in excluding his testimony. We overrule appellants' fourth point of error.

By their fifth point of error, appellants argue that the trial court erred by denying their post-trial motion for default judgment against Pro–Kote because they proved their allegations against Pro–Kote.

◼ A post-answer default judgment is appropriate when a defendant has answered but has failed to appear at trial and the plaintiff has proven his case against the absent defendant. *Frymire Engineering Co., Inc. v. Grantham,* 524 S.W.2d 680 (Tex.1975).

◼ Appellants' claim is based upon their argument that they proved their allegation that Pro–Kote failed to adhere to its MBE contract and that it had a duty to provide a safe work place because appellants allege that Pro–Kote was in the posi-

tion of co-general contractor. Evidence presented at trial showed that Industrial Contractors and Pro–Kote were subcontractors of the general Contractor Irrigation/Idela. The general contractor had a duty to insure that the workplace was safe. No evidence was offered to establish Pro–Kote's negligence. No evidence was offered or admitted suggesting that any act by Pro–Kote proximately caused the accident in question. Pro–Kote's negligence was not submitted to the jury. Issues were neither requested nor submitted. We find no error. Appellants' fifth point of error is overruled.

◼ Appellants argue by their sixth point of error that appellees' jury arguments were so inflammatory that they could not be cured by objection or instruction. Appellants point to various points in appellees' argument in which they referred to appellants' settlement with Industrial and Irrigation.

In this case, appellants' counsel told the jury during the voir dire examination that there were other defendants that had already settled "so we think they paid for their part of it and these people (appellees) have not." During his opening statement, appellants' counsel again stated that:

The contractor should have known better and that's why they paid, that's why they settled. They admitted they were wrong.. It's nowhere near the wrong these two defendants have committed.

Universal's attorney argued that the contractors settled and paid dearly. He argued:

I wish I could tell you how much they paid, but it's not material in this case. We can't do it. When the case is over I can tell you. Any of the lawyers can tell you.

So suffice it to say that the sum they paid was huge. It would have been huge to a Rockefeller. It was a big bunch of money.

Bovay's counsel also made reference to the enormous sum of money received from the contractors. The gist of Bovay's argument was that appellants had made huge

settlements with the contractors and were demanding even more from appellees. Appellants' only objection to the jury argument was:

I would object to "It would have been huge to a Rockefeller," unless he knows how much Rockefeller made and I wish he would tell the jury how much he made and we can compare it.

There were various unobjected-to references to the fact of settlement throughout the trial.

The Supreme Court of Texas set forth the burden placed on a party desiring to reverse a case for improper jury argument in *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex.1979). The Court stated:

In the case of improper jury argument, the complainant must prove a number of things. He has the burden to prove (1) an error (2) that was not invited or provoked, (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for a mistrial, and (4) was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge. ... There are only rare instances of incurable harm from improper argument. The complainant has the further burden to prove (5) that the argument by its nature, degree and extent constituted reversibly harmful error. How long the argument continued, whether it was repeated or abandoned and whether there was cumulative error are proper inquiries. All of the evidence must be closely examined to determine (6) the argument's probable effect on a material finding. (7) Importantly, a reversal must come from an evaluation of the whole ends with the closing argument. The record may show that the cause is weak, strong, or very close. From all of these factors, the complainant must show that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence.

It is undisputed that appellants were the first to raise the fact of settlement in this case. We do not believe this necessarily invited appellees' comments about the amount of settlement. However, we believe that any error concerning the inflammatory nature of this argument could have been properly cured by a proper objection and subsequent instruction to the jury. Appellants' objection was too general to preserve error. Even if appellants' objection could be considered proper, after a careful evaluation of the entire case, we have determined that appellants have not shown that the probability that appellees' final arguments caused harm is greater than the probability that the verdict was grounded on proper proceedings and the evidence. *Standard Fire Insurance Co. v. Reese*, 584 S.W.2d at 839–40. We hold that the error, if any, was not reasonably calculated to cause and probably did not cause the rendition of an improper judgment. Tex.R.App.P. 81(b)(1); *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361, 365 (Tex.1987).

■ Appellants also complain of a chart drawn by Bovay's attorney during closing argument. The exhibit, which was not admitted into evidence, but is part of the record, has a dollar sign and a line for Industrial, decedent's employer. Only one line with a dollar sign appeared for both Irrigation and Idela. Appellants complaint is that the document wrongfully imputed negligence to Industrial which was improper under law because Industrial was the decedent's employer. Appellants attempted to have the jury instructed to disregard the diagram the day after they had begun deliberations. The diagram appears to have been made when Bovay's attorney was arguing to the jury that appellants had already gotten money from the settling parties in the case.

An objection, to be timely, must be made at the time of the objectionable statement. *See Masi v. Scheel*, 724 S.W.2d 438 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582 (Tex. App.—Corpus Christi 1982, writ ref'd n.r. e.). Appellant's attorney alleges that he was not in a position to see what appellee's attorney was writing. The trial judge

heard appellants' attorney's motion and rejected it. We believe that an objection not made until the day after the jury had begun their deliberations came too late. We find that any error in the argument was not properly preserved. We overrule appellants' sixth point of error.

The judgment of the trial court is AFFIRMED.