Luis C. PEREZ, Appellant,

v.

Wagdy A. BAGOUS, M.D., Appellee.

No. 13–91–494–CV.

Court of Appeals of Texas,
Corpus Christi.

June 25, 1992.

George Ann Maisner Harpole, Corpus Christi, Luther H. Soules, III, San Antonio, for appellant.

Thomas F. Nye, Alan J. Couture, Corpus Christi, for appellee.

Before DORSEY, KENNEDY, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

DORSEY, Justice.

This case involves the use of one exhibit to create another outside the presence of the jury and without notice to the court or to opposing counsel. By three points of error, appellant contends that the trial court erred by refusing to instruct the jury to disregard both exhibits and by denying his motion to withdraw one of them. We affirm the judgment of the trial court.

Appellant brought suit against the appellee doctor alleging medical malpractice. Appellant Perez claimed that he suffered functional problems in his left hand because the defendant physician negligently gave him an injection. Perez contended that the doctor inserted the needle into his forearm, damaging the posterior interosseous nerve (the nerve between the bones). The doctor countered that he properly injected the appellant in the elbow, far from the nerve. The key issue at trial was whether the needle used for the injection was long enough, if inserted into the fore-

arm as appellant contended, to reach the posterior interosseous nerve.

Appellee admitted Defendant's Exhibit 5, a five-eighths inch needle in its sheath. This needle was the same length as the one used to inject appellant. Opposing experts testified about the ability or inability of a needle that length to reach the nerve.

Throughout the majority of the trial, counsel for both parties used a plastic model arm as demonstrative evidence to assist the jury in its fact-finding role. The model had not yet been admitted into evidence. During a jury recess, the appellee doctor, at his attorneys' direction, removed the Exhibit 5 needle from its sheath and inserted it into the model arm precisely where appellant testified he received the injection. Appellee did not tell either the court or appellant he had done this, although he claims he did tell the court reporter. Appellee then admitted the model arm with the inserted needle into evidence. Appellant, not realizing that the model arm used throughout the trial now had a needle in it, did not inspect the model and allowed it to be entered into evidence without objection. The model arm with the Exhibit 5 needle in it became Defendant's Exhibit 9.

Prior to the start of closing arguments, appellant's counsel accidentally broke the cap off of the needle, leaving only the needle itself protruding slightly. Appellant did not move to withdraw the model with the remains of the needle protruding from it or request an instruction that the model or the remains of Exhibit 5 be disregarded by the jury.

During closing arguments, the first of appellee's counsel to argue told the jury that a needle had been inserted into the model arm, and he suggested that the jurors dismantle the model to determine whether the needle penetrated the posterior interosseous nerve. Appellant's counsel interrupted, asking if the exhibit had been tampered with, and appellee's counsel replied that the needle was in the model at the time it was admitted into evidence. Counsel also stated that the only alteration made since the exhibit's admission was the breaking off of the needle cap. Appellant did not make a request or motion to disregard or withdraw the model arm exhibit at this time.

Appellee's other counsel, during his portion of closing arguments, referred to the model arm and to the fact that the needle had been inserted into it. Likewise, at this time appellant did not move that the evidence be withdrawn or that the jury be instructed.

After the jury retired to deliberate, all exhibits, including the remains of Defendant's Exhibits 5 and 9, were delivered to them in the jury room. They recessed for the day, and when they returned the next morning, the exhibits were withheld from them temporarily. Appellant requested that the court withdraw Defendant's Exhibits 5 and 9 because Exhibit 5, the needle, had been altered when it was taken out of its sheath, and Exhibit 9, the model arm with the remains of the needle in it, was the result of an out-of-court experiment. Appellant also requested that the jury be instructed not to consider the exhibits for any purpose. Appellee's attorney objected to the requests.

The trial court instructed the attorneys to take the model to a jeweler to have the remains of the needle removed. The jeweler was unable to extract the needle, so he pushed it into the model instead, making it no longer visible. The trial court then denied appellant's motion to withdraw the exhibits and refused to give the requested instructions. In the meantime, the jury requested that the two exhibits be returned to them. The model arm was returned, and shortly afterward, the presiding juror asked the bailiff whether he knew the needle was missing. No explanation was given to the jury regarding the whereabouts of the needle. Finally, the jury sent a note to the court asking whether monetary damages could be awarded absent a finding of negligence.

The jury ultimately found no liability on appellee's part, and the court entered a take-nothing judgment against appellant. It is this judgment of which appellant complains. The thrust of the appellant's contentions is that the needle, already an ex-

hibit in evidence, was surreptitiously inserted into the model arm used as demonstrative evidence throughout the trial with no notice to himself or to the court. This altered the model substantially. The model was then admitted into evidence, and the appellant was not informed of the alteration.

Tex.R.Civ.P. 75b directs that

All filed exhibits admitted in evidence ... shall, until returned or otherwise disposed of as authorized by Rule 14b [not at issue here], remain at all times in the clerk's office or in the court or in the custody of the clerk....

Once a party has admitted an exhibit into evidence at trial, the exhibit may not be retrieved and used to create another during a jury recess without notifying opposing counsel or the court. It is wholly outside the scope of the rule to then enter this newly created exhibit into evidence without informing opposing counsel of the use of the entered exhibit. In this case, the main issue was whether a needle of the length used by the defendant doctor was long enough to cause the damage the plaintiff alleged to have sustained. The defendant retrieved a needle he had already admitted into evidence—during a jury recess—and inserted it into a model arm both parties had used throughout the trial as demonstrative evidence, with no notice to the plaintiff or to the court. Defendant then admitted the arm with the needle in it into evidence, again with no notice that he had manipulated the evidence. Because the needle did not reach the nerve appellant claimed it did, this demonstration was very persuasive against appellant's position.

Both parties liken the actions of appellee to an out-of-court experiment. We find this to be an improper analogy. The typical out-of-court experiment is the reenacting of a car accident under the same or substantially similar circumstances of the accident at issue in trial, with the results then being shown to the jury. *See Fort Worth & Denver Ry. Co. v. Williams*, 375 S.W.2d 279 (Tex.1964) (video of out-of-court experiment showing that beam of light similar to train headlight could blind driver of car approaching railroad crossing); *Garza v. Cole*, 753 S.W.2d 245 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (video of reenactment of out-of-court car/pedestrian accident); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.) (defendant's out-of-court test on transmission of vehicle to show plaintiff's car not defective). Appellee's actions were not within the spirit of an out-of-court experiment.

We find the actions of appellee and his counsel improper. Once an exhibit has been admitted into evidence, it should not be tampered with, but rather if a party wishes to use it in some fashion, that party must give notice to opposing counsel and to the court, particularly when the admitted exhibit is used to create a new exhibit which is then admitted, without explanation, into evidence.

However, although counsel acted improperly, appellant failed to object to the admission of the evidence and failed to move the court to withdraw it until the afternoon of the second day of deliberations. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. Tex.R.App.P. 52(a).

Generally, in order for an objection to the admission of evidence to be timely, it must be made when the evidence is offered, not after it has been introduced. *Boyer v. Scruggs*, 806 S.W.2d 941, 946 (Tex.App.—Corpus Christi 1991, no writ); *Commercial Union Ins. Co. v. La Villa Indep. School Dist.*, 779 S.W.2d 102, 110 (Tex.App.—Corpus Christi 1989, no writ); *Montes v. Lazzara Shipyard*, 657 S.W.2d 886, 889 (Tex. App.—Corpus Christi 1983, no writ). Due to the atypical nature of the admission at issue here, however, we do not find that the appellant waived error by failing to object at the time the evidence was admitted. Appellant contends that an objection need not be made until the reasons for the objection become apparent. We agree with

appellant in light of the specific facts of this case.

Appellee contends that appellant had four subsequent opportunities after the admission of the exhibit to make a request or motion regarding the tendering of it to the jury: 1) before closing arguments, when appellee maintains that appellant's counsel discovered the needle in the model, then inadvertently broke the cap off of the needle, 2 & 3) during closing arguments, during which both of appellee's attorneys discussed the creation of the exhibit, and 4) when the exhibits were tendered to the jury at the start of deliberations.

Appellant maintains on appeal that he discovered that the Exhibit 5 needle was inserted into the model during closing arguments; appellee contends that appellant admitted to discovering the nature of the exhibit before closing arguments began. Regardless of when appellant made the discovery, adopting his analysis, we find that error was waived. The first attorney to argue appellee's position told the jury,

When you look at the model, there was a needle put in the little circle that [Plaintiff] drew on there, and the head of it has snapped off, but it's buried to the hilt; and you can take that model apart and look under the muscle and see whether it penetrates.

Appellant's attorney interrupted counsel and asked, "I don't want to object there, but are you saying the exhibit has been tampered with?" Appellee's other attorney stated, "The needle was in there, Your Honor, when it was introduced into evidence." Having become fully aware that Defendant's Exhibit 9 was not what he presumed it to be, appellant did not move the court at that time to withdraw the exhibit or to instruct the jury to disregard it. Later, appellee's second attorney addressed the jury, stating,

Now, another thing you need to know is that if you'll look carefully at the model when you get it, and I'm not saying anybody did this on purpose, but when that model was introduced, it had the needle out of Exhibit 5 stuck right down through the place where Mr. Perez marked. And I gave them two ample opportunities to be sure and inspect it

when I introduced it, if you will recall, and no one wanted to, so it was introduced and it had the needle in there at that time.

Again, no motion or request was made by appellant with regard to Exhibits 5 and 9. Applying appellant's contention that no objection to the admission of evidence need be made until the basis for the objection becomes apparent, by his own admission on appeal, appellant discovered the need for an objection twice during closing arguments. Failure to make a request or motion at either time waived error pursuant to Rule 52(a). Therefore, any objection to the jury's consideration of the evidence at the time the exhibits were tendered to the jury was automatically waived.

■ Appellant moved the court to instruct the jury to disregard Exhibit 5, because the needle had been removed from its sheath, and Exhibit 9, due to the circumstances surrounding its creation, during the middle of the second day of deliberations. This Court has held that such an objection comes too late. *Rodriguez v. Universal Fastenings Corp.*, 777 S.W.2d 513, 519–20 (Tex.App.—Corpus Christi 1989, no writ). In that case, appellee's attorney drew a chart for the jury during closing argument. Appellant complained on appeal that at the time the chart was drawn, he was not in a position to see it. The day after the jury began deliberations, appellant moved the court to instruct the jury to disregard the chart. This Court held, "We believe that an objection not made until the day after the jury had begun their deliberations came too late," and that the error was not properly preserved. Appellant's motions made during the second day of deliberations in this case came too late as well. Having waived any error committed by both the opposing party and the trial court, appellant has preserved nothing for our review, and his three points of error are overruled.

The judgment of the trial court is AFFIRMED.