MORALES v. CLINE.  (No. 5983.)

(Court of Civil Appeals of Texas.  San Antonio.  March 20, 1918.  Rehearing Denied April 24, 1918.)

1. ATTORNEY AND CLIENT ⬅166(1)—ACTION FOR COMPENSATION — NEGLIGENCE — EVIDENCE.

Evidence held insufficient to show bad faith or gross negligence such as would entirely bar an attorney from recovering compensation, although he erroneously advised an alien that he could hold title to land in Oklahoma.

2. APPEAL AND ERROR ⬅1056(6)—HARMLESS ERROR—EXCLUSION OF EVIDENCE.

Assuming that it was the duty of an attorney acting as a broker to exercise his skill as a lawyer, where he had erroneously advised an alien principal that he could hold land in Oklahoma, the remedy of the principal was damages arising from the advice. Hence, where it was not alleged or shown that the title of the principal had been attacked, there was no reversible error in excluding the statutes of Oklahoma from the evidence in an action by the broker for his commission, although it appeared that the principal to protect himself had transferred the property to a corporation organized for the purpose, since even with aid of such statutes, defendant could not have defeated the claim.

3. APPEAL AND ERROR ⬅1046(5)—HARMLESS ERROR—REMARKS OF COURT.

Remark of court as to a fact not pleaded and not submitted to the jury, and which did not bear on any issue submitted to the jury, will not justify a reversal.

4. APPEAL AND ERROR ⬅544(3)—BILL OF EXCEPTIONS—NECESSITY.

Where there is no bill of exceptions showing the matter, an assignment that the court gave a verbal instruction cannot be considered, although it was complained of in the motion for a new trial.

5. APPEAL AND ERROR ⬅548(4)—NEW TRIAL ⬅143(2)—MISCONDUCT OF JURY—RECORD.

Where there was no bill of exceptions, and no evidence was introduced, and statement of facts did not show that affidavits filed had been introduced in evidence, to show that the jury took the evidence of a party on a former trial into the jury room, such matter cannot be reviewed under Rev. St. 1911, art. 2021. The method of proving misconduct of jury on motion for new trial is by introduction of testimony, and not by affidavit.

6. APPEAL AND ERROR ⬅499(4)—RECORD—INSTRUCTIONS.

The record must go further than show that a party excepted to a refusal to give special charges, and must show by bill of exceptions that the charges were presented at the time and manner prescribed by law.

7. BROKERS ⬅86(8)—COMPENSATION—PROOF OF AGREEMENT.

Findings that, after an exchange of lands, an agreement was made with plaintiff that his part of the commission should be a specified amount, held supported by the evidence.

Appeal from District Court, Bexar County; J. T. Sluder, Judge.

Suit by H. B. Cline against Martin Morales. Judgment for plaintiff, and defendant appeals. Affirmed.

Chambers & Watson, of San Antonio, for appellant. Davis & Long, of San Antonio, for appellee.

MOURSUND, J.  H. B. Cline sued Martin Morales for $3,500, being the balance alleged to be due him as a commission for services rendered in bringing about the exchange of Morales 90,000 acres of land in Mexico, known as El Carmen, for a five-story hotel building and lot in the city of Muskogee, Okl., and for $800, alleged to be due him as attorney's fees, and $65 alleged to

have been paid by him at Morales' request for stenographic work.

Plaintiff alleged an express contract to pay him 10 per cent. on the exchange valuation placed on Morales land, and in the alternative an implied contract, in which connection he alleged that 10 per cent. was a reasonable commission. He alleged that the deal was consummated by the exchange of deeds in February, 1916, and that afterwards Morales, without the advice and direction of plaintiff, and acting in accordance with the advice of his attorney, Manuel Garza Aldape, and of Oklahoma attorneys, organized a private corporation, under the laws of Oklahoma, for the purpose of taking and holding title to said hotel property in trust for the use and benefit of defendant, and about April 6, 1916, caused a deed to be executed conveying the hotel property to such corporation. He further alleged that, after the exchange of said properties had been consummated, in order to ratify and confirm such agreement and to evidence his indebtedness to plaintiff, Morales executed and delivered to plaintiff the following agreement:

"San Antonio, Tex., Feb. 4, 1916.

"To Whom it May Concern: I hereby certify that H. B. Cline sold my 19⁵/₉ leagues, in Sierra de Carmen, state of Coahuila, Mexico, for $80,000.00; that I am entirely satisfied with his work, and as proof of same, he is the only one who has had an option to sell all my properties. I am also satisfied with his examination of title to Hotel Turner, in Muskogee, as well as his work in drawing up papers in the trade. He charged me only five per cent. in the deal, outside of his work as lawyer, and I heartily recommend him to not only all persons wishing to deal with him for my properties, but for any other properties.

"Very truly yours,
"[Signed] Martin Morales."

He further alleged that on or about February 4, 1916, after the deal had been closed, defendant agreed and promised to pay him $4,000 in full settlement of his claim against defendant for commission, and that $500 had been paid him. He prayed for judgment for the remaining $3,500, with interest, and for the other sums sued for, and in the alternative for $8,365 on implied contracts.

Defendant answered by general denial and pleas as follows: That he paid $500 in full satisfaction of plaintiff's claim; that on or about September 25, 1915, a partnership was formed by plaintiff, defendant, and others, which was entitled to the commission for the sale of the El Carmen tract instead of plaintiff individually; that such partnership was dissolved on December 9, 1915, but it was agreed that commission for sale or exchange of El Carmen land would be divided in the proportions fixed by the partnership agreement; that by reason of such partnership and said agreement plaintiff was estopped from suing in his own name to recover such commissions; that the corporation mentioned in plaintiff's petition was organized upon the advice of plaintiff; that said corporation was organized under the laws of Oklahoma in good faith, and is a bona fide corporation, but, if not, then plaintiff is responsible for failing to properly and correctly advise defendant, and the trade would not have been consummated had defendant known that such incorporation was in violation of the laws of Oklahoma, but was advised by plaintiff that the charter was valid and would protect defendant; that plaintiff was defendant's attorney and advised him in the entire exchange of said lands and, while acting as agent and attorney, represented and agreed with defendant that he had a purchaser for resale of the hotel property, and that no commission would be due until defendant had resold the property for not less than $80,000; that plaintiff further represented that he had a purchaser for said property, who had $105,000 in cash; that all of said statements were false and made to induce, and did induce, plaintiff to exchange his property for the hotel property; that plaintiff was also acting as defendant's legal adviser for the purpose of passing on title to hotel property, and to examine the laws of Oklahoma and ascertain if an alien could hold land in Oklahoma, and in every way to guard and protect the interest of defendant, but plaintiff failed to protect defendant's interest, and was guilty of gross carelessness, negligence, and fraud, in that he did not advise defendant, who was an alien and did not understand the English language, that an alien could not hold or own land in Oklahoma, but advised and permitted defendant to accept a deed to said property in Oklahoma, by purchase or exchange of the kind set out in plaintiff's petition. In this connection, defendant pleaded the articles of the statutes of Oklahoma relied on by him to show that an alien could not own land in Oklahoma acquired by purchase. He then alleged that plaintiff's conduct was fraudulent and in bad faith and contrary to the interests of defendant, and that defendant would not have accepted a deed to the Oklahoma property, but for the advice of plaintiff and representation that he had a purchaser for the hotel property, and that defendant's advice that he could own land in Oklahoma was a willful, intentional, fraudulent, or careless misstatement of the law. He pleaded all of the matters alleged by him in bar of plaintiff's right to recover either as agent or attorney.

By supplemental petition plaintiff denied under oath that he was a partner of any of the persons named in defendant's answer, and alleged that, if any partnership existed, it was dissolved by mutual consent on December 9, 1915; that if the alleged partnership was entitled to commission for exchange of the defendant's land, such commission, by express agreement, was $8,000; and that after the dissolution of the partnership defendant settled the claims of all the persons alleged to have been partners of plaintiff for a

share of said commission, and under the partnership agreement and the other agreement alleged by defendant plaintiff's share of such commission was $4,800, and in the alternative prayed for the recovery of such sum, but alleged that the agreement pleaded by him to the effect that defendant would pay him $4,000 was made with the distinct understanding that the other partners had been paid, and that said sum should be plaintiff's entire interest in the commission of $8,000. He specially denied each material allegation of defendant's answer, and pleaded that defendant of his own accord, and not under advice of plaintiff, and at a time when he was not legally bound to exchange his land for said hotel property, voluntarily organized the corporation known as Bacon Investment Company, and took a deed to said hotel property in the name of said corporation dated April 6, 1916; that he took possession of said property, and he and said corporation have been in continuous possession ever since, collecting the rents therefrom; that at the time such deed was taken defendant had full knowledge of the laws of the state of Oklahoma, as pleaded by him. He further averred that by reason of such facts defendant was estopped from pleading the invalidity of the deed from Loomis to the Bacon Investment Company, and that if plaintiff had been guilty of fraud or negligence, which was denied, defendant by his acts is estopped from relying thereon and waived the same. He further alleged that under the Constitution and laws of Oklahoma an alien has the right to own land for five years, and that in incorporated cities, such as Muskogee, under said Constitution and laws aliens were entitled to own and hold property for five years.

In answer to special issues the jury found: That defendant employed plaintiff as an agent to sell or exchange the El Carmen tract of land in Mexico, belonging to defendant; that plaintiff, in pursuance of such employment, procured an exchange of said land for the Turner Hotel in Muskogee, Okl., belonging to J. A. Loomis; that defendant, in pursuance of such exchange, conveyed the El Carmen tract to Loomis and took a conveyance to and possession of the hotel property, either directly or through the Bacon Investment Company; that the El Carmen tract was valued by the parties for the purposes of said exchange at $80,000; that in employing plaintiff to make said deal defendant agreed to pay plaintiff a commission of 5 per cent. upon said exchange price; that defendant paid plaintiff $500 on account of said commission on or about July 27, 1916; that it was not understood that such payment was in full settlement of the commission account; that plaintiff did not as an attorney at law and at the instance of defendant, in good faith, perform any legal services for defendant relating to the transactions involved in this suit as alleged in plaintiff's petition; that plain-

tiff did not loan or advance $65 in connection with the matters involved in this suit; that plaintiff did not represent to defendant that he had a purchaser for resale of the hotel for $105,000; that plaintiff did not agree that no commission would be due or payable until the property had been resold by defendant; that plaintiff was to receive his commission when the exchange should be consummated; that after the exchange had been consummated plaintiff and defendant agreed that plaintiff's part of the commission for said exchange should be 5 per cent. on $80,000.

Upon this verdict judgment was entered in favor of plaintiff for $3,500 with interest from April 6, 1916, to date of judgment, in all, the sum of $3,742.

It is contended that the court erred in excluding certain articles of Oklahoma laws, relative to aliens owning land in said state; the proposition being that such evidence should have been admitted because defendant had pleaded that plaintiff was his attorney and broker and was guilty of fraud, misrepresentation, and gross carelessness in advising him as to the law.

Defendant alleged that plaintiff was his legal adviser to examine the laws of Oklahoma to ascertain if an alien could own land in that state, and that plaintiff had failed to advise him that he could not own land in Oklahoma. In another paragraph he assumes, without directly so alleging, that plaintiff told him he could own land in Oklahoma, and charges that such statement was incorrect. His testimony is to the effect that plaintiff was acting as his attorney and adviser prior to and at the time Loomis made the first deed to him, and did not advise him one way or the other as to whether an alien could own land in Oklahoma, and that he first heard that an alien could not own land when he went to Muskogee. This testimony is not consistent with his further statement that he did not remember about the time when plaintiff first told him about the Oklahoma law, whether it was before or after the contract was made with Loomis. He testified that in December, 1915, or January, 1916, he employed Manuel Aldape, a lawyer, formerly of Mexico to look after this transaction for him. He said that plaintiff was acting as his lawyer, and examined the title to the hotel property. He did not testify to any special employment of plaintiff to examine whether an alien could own land in Oklahoma. He testified that he did not agree to pay plaintiff $800 as attorney's fees for examining the title and for translations, and did not explain by what kind of a contract he contended plaintiff became his lawyer, and became bound to investigate whether an alien could hold land in Oklahoma. He admitted that, after the contract was signed, he signed a document in which he offered plaintiff a certain percentage as commission and that he was ready to respect that

agreement. This evidently referred to the instrument pleaded by plaintiff which was introduced in evidence. He also admitted settling with the persons who were partners with him and plaintiff under the instruments referred to in his pleadings for their interest in the commission on the exchange of the properties in question.

Plaintiff testified he was employed by defendant to determine whether Loomis had good title to the hotel property and to translate the titles to El Carmen and write the deed for same. He testified that Mr. Aldape and defendant, while in his office, were discussing the matter of the exchange of the properties, and Aldape suggested the question of an alien's right to hold land; that plaintiff told him he would look the matter up, and consulted Cyc. and Hubbell's Legal Directory, and told them an alien could hold land in Oklahoma for five years. The evidence fails to show that his opinion was not sustained by the sources he investigated, and there is nothing tending to show that he acted in bad faith. This conversation arose, not only after the contract had been made between Loomis and defendant, but after it had expired according to plaintiff's construction thereof, which is not disputed. After defendant and Aldape went to Oklahoma, acting on the advice of Oklahoma attorneys, the corporation was formed and the conveyance made by Loomis and wife to such corporation. The corporation, of which defendant owns practically all the stock, had possession of the property through tenants up to the time of the trial, drawing rents therefrom to the extent of $500 per month.

[1, 2] The testimony wholly fails to raise an issue of fraud or bad faith, or gross negligence with respect to advice as attorney such as would entirely bar plaintiff from recovering compensation. However, he recovered no compensation as attorney, so we are only confronted with his right to recover in his capacity as broker; but we will assume for the purpose of this opinion that his duties as agent required him to use his skill as a lawyer to protect his principal from loss, and that the testimony raises an issue as to whether he failed to exercise ordinary care by failing to correctly inform himself of the rights of an alien under the Oklahoma laws and to inform his principal of such rights, or by failing to consult the Constitution and statutes of Oklahoma, and therefore giving his principal an incorrect opinion with regard to the rights of an alien to hold land in Oklahoma. The statutes excluded from evidence would have proven that defendant could not acquire title to land in Oklahoma by a deed from Loomis to him, and therefore would be admissible to prove the information which we are assuming it was plaintiff's duty to have given defendant. The penalty for such negligence would have been that defendant could recover of plaintiff the damages which naturally and prox-

imately resulted from the wrongful act complained of. Mechem on Agency (2d Ed.) § 1291. He did not allege any such damages, nor did he prove any. He took title to the hotel property to a corporation organized for the purpose of holding such title, and he did not plead that the corporation had no title to such property, although he did plead that a deed from Loomis to him would convey no title. If he had attacked the title of the corporation, and we could pass upon its validity in this case, we would not be in a position to hold that the statutes excluded would have shown the invalidity of the title to the corporation. He did not plead that the corporation's title had ever been attacked, and it appears that through the corporation he holds and enjoys the fruits of plaintiff's work. He did not show that he attempted to get a rescission and failed, but simply says he was compelled to resort to the expedient of a corporation in order to be enabled to legally hold and enjoy the property acquired by plaintiff's efforts. We fail to see any reason for denying plaintiff a recovery upon the charge of negligence, and hold that the exclusion of the statutes did not constitute error such as would justify a reversal of the judgment, for, even with their aid, defendant could not have defeated plaintiff's claim for commission.

[3] It is also contended that the court erred in making the remark in the presence of the jury that the reconveyance to the corporation seemed to have been very effective so far. This remark was made in the course of a conversation between the court and counsel for defendant concerning the admissibility of certain testimony. We fail to see how it could have injured defendant. It did not bear upon any issue submitted to the jury, and defendant had not pleaded that the conveyance to the corporation was void. The remark did not constitute error which would justify a reversal of the judgment.

[4] By the third assignment complaint is made to the effect that the court gave the jury a verbal instruction. There is no bill of exceptions in the record showing the proceedings with reference to this matter. The motion for new trial did not take the place of a bill of exceptions. Maffi v. Stephens, 49 Tex. Civ. App. 358, 108 S. W. 1008; Canal Co. v. McFarland, 50 Tex. Civ. App. 100, 109 S. W. 435. In the absence of a bill of exceptions, the ruling of the court is not presented in an authentic manner, and the assignment must be overruled.

[5] The matter of the jury taking all of defendant's testimony upon a former trial into the jury room, complained of in the fourth assignment, is not presented by bill of exceptions. Prior to the adoption of article 2021, R. S. 1911, such matters were undoubtedly required to be presented by bill of exceptions. Viewing it as misconduct under the article mentioned, it appears to be well settled that the method of proving same

is by the introduction of testimony and not by affidavits. Dallas Electric Ry. v. Kelley, 142 S. W. 1005; S. A. & A. P. Ry. v. Wells, 146 S. W. 645; T. & P. Ry. v. Tucker, 183 S. W. 1188. The affidavits were not offered in evidence so far as is disclosed ·by the statement of facts, and, as above stated, there is no bill of exceptions. In addition, we may say that the statement under the assignment does not show that defendant was probably injured by the jury having his entire testimony. The assignment is overruled.

[6] Assignments 5 to 8, inclusive, complain of the failure to give special charges. The record merely discloses that defendant excepted to the refusal to give the charges. It must go further and show by bill of exceptions that the charges were presented at the time and in the manner prescribed by law. We cannot assume that this was done. Connor v. Uvalde Bank, 172 S. W. 175; Rotge v. Simmler, 176 S. W. 615; Railway v. Dickey, 187 S. W. 184. The case was tried before chapter 177, Gen. Laws of the 35th Legislature (Vernon's Ann. Civ. St. Supp. 1918, art. 1974) went into effect. The assignments must therefore be overruled. We will say, however, that there is no merit in the contentions sought to be made.

[7] By the ninth assignment it is contended that the verdict of the jury is contrary to the evidence; that there is no evidence that the property was ever listed with plaintiff at 5 per cent. and no evidence that same was sold or contract made as alleged in plaintiff's petition. The finding that after the exchange of the lands an agreement was made between plaintiff and defendant that plaintiff's part of the commission for exchange of said properties should be 5 per cent. of $80,000, and the finding that only $500 of said commission had been paid, are supported by the evidence, and, such agreement having been pleaded, the judgment can be upheld upon such findings. The properties were exchanged, and defendant cannot defend on the ground that the title to the hotel property was taken in the name of the corporation. There is no merit in the assignment.

The judgment is affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes