**NATIONSBANK OF TEXAS, N.A., Appellant,**

v.

**AKIN, GUMP, HAUER & FELD, L.L.P., now known as Akin, Gump, Strauss, Hauer & Feld, L.L.P. and David W. Nelson, Appellees.**

No. 13–96–303–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 8, 1998.

Rehearing Overruled July 9, 1998.

---

James R. Harris, Andrew M. Greenwell, Harris & Greenwell, Corpus Christi, for Appellant.

George G. Brin, Brin & Brin, San Antonio, Thomas F. Nye, Linda C. Breck, Brin & Brin, Corpus Christi, for Appellees.

Before SEERDEN, C.J., and CHAVEZ and RODRIGUEZ, JJ.

## OPINION ON MOTION
## FOR REHEARING

RODRIGUEZ, Justice.

We grant appellant's motion for rehearing, withdraw our opinion dated July 9, 1998, and substitute the following opinion in its place.

This is a legal malpractice case arising out of Akin, Gump, Hauer, & Feld, L.L.P.'s ("Akin Gump") representation of Noble C. Ginther ("Ginther"). Ginther employed Akin Gump to represent him in various capacities: individually; as operator of the Sarco Creek Field ("Ginther/Operator"); and as trustee of a trust (the "Ginther Trust") created by Noble Ginther and Minnie Ginther ("Ginther/Trustee"). Appellant, NationsBank of Texas, N.A. ("NationsBank"), as executor of Ginther's estate and as trustee of the Ginther Trust, brings twenty points of error

relating to (1) the trial court's granting summary judgment to Akin Gump on Nations-Bank's causes of action for violations of the Texas Deceptive Trade Practices—Consumer Protection Act[1] ("DTPA"), fraud and misrepresentation; (2) the court's striking NationsBank's second amended supplemental petition, which asserted claims against Akin Gump for its representation of Ginther/Operator; (3) the court's dismissal of a declaratory judgment action; and (4) the court's defining Ginther in the charge as operator of the Sarco Creek Field and rendering judgment against Ginther/Operator after having dismissed Ginther/Operator's claims. Nations-Bank also complains about the sufficiency of the evidence to support the jury's award of attorney's and expert witness fees to Akin Gump and the trial court's failure to grant a new trial based on Akin Gump's alleged improper jury argument.

## FACTS

Noble Ginther, a Texas oilman, was operator and part owner[2] of the Sarco Creek Field, a lucrative oil and gas reserve in south Texas. The Sarco Creek Field became the subject of a farmout agreement with CPX Petroleum, Inc. "(CPX)". The agreement provided that CPX could produce 1,000 acres of the Sarco Creek Field, but only from gas bearing formations that were not already under production. Based on its review of Texas Railroad Commission records, CPX believed a potentially rich gas bearing zone in the Sarco Creek Field had not been perforated. Unbeknownst to CPX at the time, however, Ginther was producing from the zones CPX had targeted.

CPX drilled test wells, found gas at the 4050' level, and filed an application with the Railroad Commission requesting permission to complete wells in a number of zones, including the 4050' zone. Ginther informed CPX, per the terms of the farmout agree-

ment, that CPX could not produce from the 4050' zone because that zone was already being produced from other wells. CPX pointed to the Railroad Commission records, which reflected Ginther was not producing from the 4050' zone,[3] and claimed the right to produce from that zone. A dispute arose between Ginther and CPX which centered on whether CPX could rely on Railroad Commission records which reflected no production activity in the contested zone.

As a result of this dispute, Ginther hired Akin Gump to represent his interests, both as operator of the Sarco Creek Field and as trustee of the Ginther Trust. To answer the question regarding Ginther's liability for fraud to parties relying on Railroad Commission records, oil and gas specialist David Nelson, Akin Gump's senior counsel for Ginther, assigned a law clerk the task of preparing a memo on the issue. The "Bray Memo," named for its first-year law student author, Michelle Bray, concluded Ginther had no such liability. The correctness of the memo was the subject of some debate both before and during trial. In any event, Nelson showed Ginther the Bray Memo and counseled him according to its conclusion. Later, another Akin Gump attorney, Greg Jordan, wrote a memo disputing the conclusions of the Bray Memo. Ginther never saw Jordan's memo and was never informed there was any debate over Bray's conclusions.

In April 1989, CPX met with Ginther and the working interest owners to resolve the dispute. Ginther offered to settle for $65,000 (CPX's sunk costs). CPX countered with a demand for $4 million, claiming Ginther was guilty of fraud for failure to disclose production of the 4050' zone by proper filings with the Railroad Commission. No settlement agreement was reached. Shortly thereafter, CPX filed suit against Ginther and the other working interest owners, demanding $25 mil-

---

1. TEX. BUS. & COM.CODE ANN. § 17.41 et seq. (Vernon 1987 & Supp.1998).

2. Ginther held ownership interest through a trust (Ginther Trust) created by Noble Ginther and his wife, Minnie, in 1986. The Ginther Trust owned approximately 16% of the Sarco Creek Field lease. There were numerous other working interest owners, including Conoco Oil.

3. At the time, there was some dispute as to whether Ginther had neglected to properly record his drilling activities with the Railroad Commission. This dispute was resolved by a Railroad Commission hearing which faulted Ginther.

lion in actual damages and $8.3 million in attorney's fees.

Conoco [4] and all the working interest owners except Ginther settled their portions of the lawsuit prior to trial in October 1992 for approximately $2 million cash, plus their working interests in the Sarco Creek Field. Ginther went to trial represented by attorney Jack McConn (hired by NationsBank [5]) and appellee. Following six days of trial, Ginther settled with CPX for $1.5 million cash, plus Ginther's interest in the Sarco Creek Field.

Two groups of former working interest owners filed separate suits in Harris County against Ginther/Estate for contribution and indemnity resulting from their losses in the CPX litigation.[6] This exposure to further liability prompted NationsBank to file the underlying lawsuit against Akin Gump.

Fundamentally, NationsBank claimed that, had Akin Gump rendered proper legal advice to Ginther and his successors-in-interest, Ginther would have appreciated the magnitude of the risks created by his failure to properly file with the Railroad Commission and settled with CPX much earlier in the litigation process when settlement would have been far less expensive to Ginther's interests and those of the working interest owners.

### THE SUMMARY JUDGMENT

In points of error 1, 1–A through 1–D, and 1–H, NationsBank complains the trial court

erred in granting Akin Gump's motion for partial summary judgment on NationsBank's DTPA causes of action because there was no conclusive evidence negating each element of the causes of action asserted. Before addressing the merits of these points of error, however, we must first resolve what appears to be an issue of first impression.

By points of error 1–E, 1–F, and 1–G, NationsBank claims the trial court erred in holding it was not a "consumer" under the DTPA. Akin Gump alleged in its motion for summary judgment that because Nations-Bank has assets greater than $25 million, it could not qualify as a consumer, and thus the asserted DTPA causes of action must fail. NationsBank asserted it brought the DTPA claims in its representative capacity on behalf of the Ginther Trust and the Ginther Estate, and thus, the amount of its assets are irrelevant in determining consumer status.

We must therefore determine whose assets a trial court considers in ascertaining consumer status. Does the court look at the assets of the plaintiff, in this case Nations-Bank, or does it look to the assets of the real party-in-interest, in this case, the Ginther Trust and the Ginther Estate? If we determine the court should look to the assets of the Ginther Trust or the Ginther Estate, NationsBank, as trustee and executor, is a consumer and can properly bring DTPA causes of action on behalf of the trust and

---

4. Conoco sold its interest in Sarco Field to the Pintail Group. Pintail later sued Conoco under the same theory used by CPX; that is, failure to properly file documents with the Railroad Commission resulting in harm to Pintail. That case settled for $750,000, plus an Agreed Judgment for $5 million.

5. Ginther died in September of 1989, two months after CPX's initiation of the lawsuit. Thereafter, the Ginther Estate succeeded to the claims and liabilities of Ginther/Operator. At the time of his death, Ginther's interests were represented by River Oaks Bank acting as executor of his estate and trustee of the Ginther Trust. NationsBank assumed both duties in late 1990. "Ginther" in this context refers to both the Ginther Trust and the Ginther Estate.

6. *See* Cause No. 231,749–403; *NationsBank of Texas, N.A., Independent Executor of the Estate of Noble C. Ginther, Deceased; and NationsBank of Texas, N.A., Co–Trustee for the UTA Ltd. 12/29/86*

*Trust as Created by Noble C. Ginther and Minnie Lee Ginther as Grantors v. Conoco. Inc., et al.;* In the Probate Court Number One (1) of Harris County, Texas. *See also,* Cause No. 231,749–405; Elton M. Hyder, Jr., Independent Executor of the Estate of Merle M. Rowan; A.E. Amerman, Jr.; Marcia W. Moore and Julia Mores Jones, Devisees of the Estate of Joseph Moore, Deceased; Cleveland Davis, Jr.; Cleveland Davis, Jr. as Trustee for the Cleveland Davis Testamentary Trust; Cleveland Davis, Jr. as Trustee for the James Ripley Davis Trust; Pauline Buster Davis; and Marmaton Oil Company v. *NationsBank of Texas, N.A., Independent Executor of the Estate of Noble C. Ginther, Deceased; and NationsBank of Texas, N.A., Co–Trustee for the UTA Ltd. 12/29/86 Trust as Created by Noble C. Ginther and Minnie Lee Ginther as Grantors and the Estate of Noble C. Ginther;* In the Probate Court Number One (1) of Harris County, Texas.

the estate. Conversely, if we look solely to the assets of NationsBank, an entity with assets greater than $25 million, NationsBank is not a consumer and cannot assert DTPA causes of action on behalf of the Ginther Trust or the Ginther Estate. For the reasons stated below, we hold that, in those cases in which a corporation acts in a representative capacity, such as a trustee or an executor, and any compensation received for damages will not inure to the benefit of the representative, in order to determine consumer status, the trial court should not look to the assets of the corporation, but to those of the entity that is being represented.

The purpose of the DTPA is to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions and breaches of warranty...." TEX. BUS. & COM.CODE ANN. § 17.44 (Vernon 1987). Therefore, to recover under the DTPA, the plaintiff must be a consumer. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 406 (Tex. App.—Houston [14th Dist.] 1997, writ dismissed). A DTPA consumer is

> an individual, partnership, corporation, this state, or a subdivision of this state who seeks to acquire by lease or purchase, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

TEX. BUS. & COM.CODE ANN. § 17.45(4)(Vernon 1987).

Akin Gump argues first that we should look to NationsBank's assets to determine consumer status because it judicially admitted it was the plaintiff who brought the instant lawsuit. This argument is specious. Very clearly, throughout these proceedings, NationsBank has asserted its status as "NationsBank as independent executor of the Ginther Estate or as trustee of the Ginther Trust." At no time has NationsBank asserted any cause of action in its own name or for its own benefit.

█ Akin Gump next asserts its summary judgment was based on the fact the trust and the estate were owned or controlled by NationsBank, an entity with assets greater than $25 million. In support of that assertion,

Akin Gump relies on *Huie v. DeShazo*, 922 S.W.2d 920, 925 (Tex.1996), which held that it is the trustee who retains the attorney who is the real client, not the trust or the trust beneficiaries. We find *Huie* distinguishable for two reasons. First, the issue in *Huie* was not whose assets were to be considered when determining consumer status, but whether a trustee who retains an attorney to advise him on matters regarding trust administration must disclose the substance of conversations between the trustee and the attorney. Second, it is undisputed that it was Ginther, not NationsBank, who initially hired Akin Gump, and it was to Ginther, not NationsBank, to whom Akin Gump allegedly made misrepresentations and committed fraud. NationsBank is merely Ginther's successor-in-interest. We do not find this shift in interest to be dispositive of consumer status. *See Fireman's Fund Ins. Co. v. Murchison*, 937 F.2d 204, 206, n. 1 (5th Cir.1991).

In *Murchison*, Fireman's Fund filed suit against Clint W. Murchison, III and Clint W. Murchison, Jr. as trustees for various Murchison family trusts, seeking indemnity for claims paid on construction bonds. As an affirmative defense, the trusts alleged Fireman's Fund violated the DTPA by issuing the bonds. The Fifth Circuit stated:

> Although the record does not disclose, it is very unlikely that the Trusts' assets are less than $25 million. Therefore, the Trusts probably could not establish the elements of their DTPA defense. If the Trusts can establish consumer status under the DTPA, then their defense could be submitted to the jury to determine whether Fireman's violated the DTPA.

*Fireman's Fund*, 937 F.2d at 209.

What is significant about the *Murchison* decision is that it assumed without deciding that, under Texas law, it is the assets of the trust, not the trustee, that must be examined to determine consumer status.

Relying on *Trimble v. Itz*, 898 S.W.2d 370, 372 (Tex.App.—San Antonio 1995, writ denied), Akin Gump claims NationsBank cannot qualify as a consumer through its successor status. In *Trimble*, State Farm Lloyd's paid its insureds, the Trimbles, for losses result-

ing from an electrical fire in their home. The home was constructed by Hall Construction Company and the electrical work was done by Itz. Although the action was styled in the Trimble's name, it was undisputed that State Farm was actually pursuing the claim as subrogee of the Trimbles. Itz filed a motion for partial summary judgment claiming State Farm could not claim consumer status through the Trimbles, and because it had assets of more than $25 million, it could not act as a consumer in its own right. State Farm responded that due to the nature of its claim for subrogation, it did not need to satisfy the definition of a consumer under the DTPA. Instead, it could assume the Trimbles' consumer status as part of its subrogation rights.

The San Antonio court declined to accept State Farm's argument. Applying the standard rules of statutory construction that every word of a statute must be presumed to have been included for a purpose and words excluded must have been excluded for a purpose, and because the legislature defined which individuals and entities have standing to assert a private cause of action for DTPA violations and made no exception for a subrogee, State Farm was not a consumer. *Trimble,* 898 S.W.2d at 372.

While we agree with this analysis generally, we do not believe it necessary to delve into issues of statutory construction. *Trimble* is distinguishable on its facts. In *Trimble,* as in all subrogation cases, State Farm was not asserting its subrogation claim for the Trimble's benefit, but for itself; the Trimbles had already been compensated by State Farm. Via the suit, State Farm was attempting to recoup from Hall and Itz the money it had paid to the Trimbles. In short, State Farm was protecting its own financial interests. By contrast, in the present case, NationsBank did not assert the suit for its own interest, but on behalf of the Trust and the Estate. It will gain nothing if the suit is successful.

■ We conclude the relevant inquiries to be made in determining consumer status are (1) to whom the representations were made; (2) who suffered damages from the representations; and (3) who was affected by the

defendant's alleged misconduct. Clearly in this case, the representations were made to Ginther/Operator and Ginther/Trustee. It was Ginther/Operator and Ginther/Trustee who was allegedly harmed by Akin Gump's conduct, and it was he who suffered damages, not NationsBank.

■ Akin Gump also urges NationsBank cannot assume the Trust's or the Estate's consumer status because the Trust and the Estate are "owned or controlled" by a corporation with assets of $25 million or more. Akin Gump has misinterpreted the statute. The statute exempts a business consumer that (a) has assets greater than $25 million or (b) is owned or controlled by a corporation with assets of $25 million or more. Read another way, the statute provides an entity is not a consumer if it is a business consumer that has assets greater than $25 million, or it is a business consumer that is owned or controlled by a corporation with assets of $25 million or more. Thus, the only way Akin Gump can prevail on its defense is if either the Trust or the Estate is a business consumer.

■ As the defendant below, Akin Gump had the burden to plead and prove the applicability of the business consumer status as an affirmative defense. *Eckman v. Centennial Sav. Bank,* 784 S.W.2d 672, 674 (Tex.1990). There is no evidence in the record that either the Trust or the Estate is a business consumer or has assets greater than $25 million. Thus, regardless of whether the Trust or the Estate are owned or controlled by a corporation with more than $25 million in assets, because there is no evidence either entity is a business consumer, Akin Gump failed to establish all the elements of its affirmative defense and the exemption from consumer status does not apply.

Because there was no evidence that either the Trust or the Estate were business consumers, the trial court erred in finding that NationsBank's assets of more than $25 million precluded its ability to bring a DTPA action in its representative capacity on behalf of the Trust and the Estate.

Points of error 1, 1–E, 1–F, and 1–G are sustained.

■ In point of error 1–A, NationsBank asserts the trial court erred in overruling its objections to Akin Gump's summary judgment proof on its DTPA, misrepresentation, and fraud causes of action. NationsBank claims in points of error 1–B, 1–C, 1–D, and 1–H that, because of the deficient summary judgment proof, Akin Gump failed to establish its entitlement to summary judgment as a matter of law. We agree.

Akin Gump's only evidence to support its motion for summary judgment was the affidavit of its senior partner, David W. Nelson. He made the following statements:

2. I did not make any false representations to Plaintiff.

3. I did not make any false representations to the Plaintiff that I knew to be false when made nor did I make any false representations recklessly without any knowledge of the truth and as a positive assertion when made.

4. I did not breach any express warranties that I may have made to the Plaintiffs.

5. My relationship with the Plaintiff did not concern the provision of goods.[7]

6. I did not pass off goods or services as those of another.

7. I did not cause the confusion or misunderstanding as to affiliation, connection or association with, or certification, by another.

8. I did not represent that goods or services had sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they did not have or that a person had sponsorship, approval, status affiliation or connection which he did not.

9. I did not represent that goods or services were of a particular standard, quality, or grade, or that goods were of a particular style or model, when they were of another.

10. I did not disparage the goods, services, or business of another by false or misleading representations of facts.

11. I did not represent that an agreement conferred or involved rights, remedies, or obligations which it did not involve, or which were prohibited by the law.

12. I did not represent that work or services had been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced. Additionally, as noted above, the relationship between myself and Plaintiff did not involve goods.

13. I did not fail to disclose information concerning people or services which was known at the time of the transaction in order to induce the Plaintiff into a transaction into which the consumer would not have entered had the information been disclosed.

14. I did not knowingly commit any violations of the DTPA.

After stating he had personal knowledge of the work performed by himself and other employees of Akin Gump, Nelson made the same statements with respect to Akin Gump.

■■ Testimony comprised only of legal conclusions is insufficient to support summary judgment as a matter of law. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991); *see also Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex.1984); *Hidalgo v. Surety Savings & Loan Ass'n*, 487 S.W.2d 702, 703 (Tex.1972) (per curiam). Likewise, conclusory statements made by an expert witness are insufficient to support summary judgment. *Anderson*, 808 S.W.2d at 55; *Vinklarek v. Cane*, 691 S.W.2d 108, 111 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

Nelson's affidavit is wholly insufficient to negate NationsBank's causes of action for DTPA violations, misrepresentation, and fraud as a matter of law; it is merely a sworn denial of NationsBank's claims.

■ In a novel argument, Akin Gump contends that any error in granting the summary judgment was harmless because Nati-

7. Significantly, Nelson did not state his relationship with the Plaintiff did not concern the provision of services.

onsBank's DTPA causes of action were, in reality, alternative methods of asserting legal malpractice. It relies on *Judwin Properties, Inc. v. Griggs and Harrison,* 911 S.W.2d 498 (Tex.App.—Houston [1st Dist.] 1995, no writ), where the court explained that alternative causes of action, such as breach of implied warranty, breach of fiduciary duty, and improper disclosure of confidential information, will fail as a matter of law when they are simply the means to an end to assert legal malpractice: "Judwin's claim is essentially for improper disclosure of confidential information; therefore it is couched entirely in legal malpractice. The . . . claim fails as a matter of law." *Judwin,* 911 S.W.2d at 504.

We do not reach this point, however, because Akin Gump failed to preserve this issue for our determination. Nothing in Akin Gump's motion for summary judgment, or in NationsBank's reply, suggested that all causes of action against an attorney grounded in negligence amount to legal malpractice. Rule 166a of the Texas Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if . . . the moving party is entitled to judgment as a matter of law *on the issues expressly set out in the motion or in an answer or any other response.*" (Emphasis added). As the supreme court held in *Casso v. Brand,* 776 S.W.2d 551, 553 (Tex.1989),

> all theories in support of a summary judgment, as well as all opposing issues, must be presented in writing to the court at the hearing. "It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding."

(quoting *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983)).

By waiting until it filed its Appellee's Brief to assert this contention, Akin Gump waived its theory. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671 (Tex. 1979). Points of error 1–A, 1–B, 1–C, 1–D, 1–H, and 1–I are sustained. Due to our disposition of point of error 1–I, it is unnecessary to address point of error 1–J, wherein NationsBank claims fact issues exist which preclude summary judgment on its fraud and misrepresentation causes of action.

## THE DECLARATORY JUDGMENT ACTION

As a result of the CPX litigation, Conoco and other working interest owners of the Sarco Creek Field (collectively referred to as "Conoco"), paid $1.9 million to CPX and forfeited to CPX their interest in the Field. Believing Ginther/Operator was responsible for their losses in the CPX litigation, Conoco filed suit against Ginther/Operator in Harris County, Texas.

As the Ginther Estate had succeeded to the interests of Ginther/Operator, NationsBank, as executor of the Ginther Estate, filed a declaratory judgment suit in the present action "requesting that the Court declare that Defendants are liable [to NationsBank] for all costs which are related to such lawsuits including reasonable attorney's fees and reasonable expenses connected with the defense of said lawsuits, as well as the costs of any settlement or judgment that may be rendered in such suits." Akin Gump filed a motion to dismiss the declaratory judgment action, claiming the trial court did not have jurisdiction to determine Akin Gump's liability, if any, to other parties in the Harris County litigation.

Akin Gump clearly misinterpreted the relief sought by NationsBank in its declaratory judgment action. NationsBank was not asking the trial court to declare Akin Gump liable to Conoco; rather, it was asking the court to declare that if NationsBank is found liable to Conoco, that Akin Gump be required to pay to NationsBank the amount of the judgment. This discrepancy appears to have been cleared up by the trial court in its order dismissing the declaratory judgment action: "it is ORDERED that this Court lacks jurisdiction to declare that [Akin Gump is] liable for all costs including reasonable attorney's fees and reasonable expenses as well as the cost of any settlement or judgment *that may be rendered against Plaintiff . . . .*"

The question remains however, as to whether the trial court properly found it lacked jurisdiction to consider the merits of NationsBank's claim. While it appears the gist of the trial court's ruling was that because no liability had yet been determined in

the Harris County litigation, any decision it would make with respect to the declaratory judgment action would be purely advisory, the trial court's order was couched solely in terms of lack of jurisdiction. We will, therefore, confine our analysis to whether the court's conclusion that it lacked jurisdiction was correct.

The purpose of the Uniform Declaratory Judgments Act is to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." TEX. CIV. PRAC. & REM.CODE ANN. § 37.002(b) (Vernon 1987). The statute expressly provides it is "remedial" and "is to be liberally construed." *Id.; Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex.1995). The Act provides:

> A court of record within its jurisdiction has power to declare rights, status, and other legal relations whether or not further relief is *or could be* claimed. An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for.

TEX. CIV. PRAC. & REM.CODE ANN. § 37.003 (Vernon 1985) (emphasis added).

At issue in the underlying litigation is whether Akin Gump is liable to the Ginther Trust and/or the Ginther Estate for representations made to Ginther individually or as operator of the Sarco Creek Field concerning the effect of his failing to file with the Texas Railroad Commission required documents related to drilling activities in the Sarco Creek Field. It is uncontroverted the trial court had jurisdiction to consider this issue.

The genesis of the Harris County litigation was that Ginther/Operator had not made the proper Railroad Commission filings and he was negligent in not timely settling the CPX litigation, which caused Conoco to pay a large money judgment and forfeit its interest in the Sarco Creek Field. Allegedly, the reason Ginther/Operator did not timely settle the lawsuit was Akin Gump's incorrect advice, based on the Bray Memo, that Ginther/Operator and Conoco had no liability to CPX for Ginther's failure to file requisite documents with the Railroad Commission.

This is precisely one of the causes of action asserted by NationsBank against Akin Gump in the instant lawsuit.

As the trial court had subject matter jurisdiction to consider Akin Gump's "failure to properly represent Plaintiff" and "failure to properly counsel Plaintiff and Plaintiff's agents and representatives," [8] we find no reason to hold it did not have jurisdiction to consider the allegations in the declaratory judgment action. We conclude therefore, the trial court erred in dismissing for want of jurisdiction NationsBank's declaratory judgment action. Point of error number three is sustained.

## THE SPECIAL EXCEPTIONS

■ After the trial court struck its request for declaratory relief, NationsBank filed a second supplemental petition asserting, *inter alia,* claims of Ginther/Operator against Akin Gump. The trial court granted Akin Gump's special exceptions to this supplemental petition in which it claimed NationsBank was attempting to get in "through the side door" what the court precluded when it dismissed the declaratory judgment action—the question of Akin Gump's liability to NationsBank for the claims of Conoco in the Harris County litigation. In its second point of error, NationsBank complains the trial court erred in granting the special exceptions, and that such action prevented it from asserting the claims of Ginther/Operator.

■ When an appellant attacks a trial court's order sustaining special exceptions and dismissing a cause of action, we review the pleading to determine whether the trial court abused its discretion in sustaining the special exceptions. *Holt v. Reproductive Serv., Inc.,* 946 S.W.2d 602, 604–05 (Tex. App.—Corpus Christi 1997, writ denied). We construe the pleading liberally, accepting as true all of the factual allegations set forth therein. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 213 (Tex.1988); *Holt,* 946 S.W.2d at 604. The trial court's ruling will not be disturbed unless there is a showing the court abused its discretion. *Id.* The test for abuse

---

8. These causes of action were set out in Nations-Bank's First Amended Original Petition.

of discretion is whether the court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1986).

Akin Gump convinced the trial court that NationsBank, in its second supplemental petition, was asking for the same relief requested in its motion for declaratory judgment. Akin Gump claims before this Court that, had the court not granted its special exceptions, NationsBank would have been able to recover damages in the present case based upon a contingent or hypothetical outcome in the Harris County litigation. Both statements are incorrect.

NationsBank's second supplemental petition asserted the failure of Akin Gump to represent Ginther's interests resulted in damages to

> Ginther in his various capacities and damages to those entities or persons for whom he was operator, trustee, representative, partner or agent. The negligent representation of [Akin Gump] which resulted from negligent acts and or negligent omissions proximately caused injury to Ginther in his various capacities and injury to the various entities or persons for whom he was operator, trustee, representative, partner or agent.

In short, NationsBank was requesting compensation for damages to Ginther, individually, and to Ginther as the agent for the other working interest owners in the Sarco Creek Field. By contrast, NationsBank's declaratory judgment petition requested that Akin Gump be held liable to it "for all costs which are related to [the Harris County] lawsuits including reasonable attorney's fees and reasonable expenses connected with the defense of said lawsuits, as well as the costs of any settlement or judgment that may be rendered in such suits."

By its terms, NationsBank's second supplemental petition asked for relief completely different from that requested in its declaratory judgment action. We conclude, therefore,

that the trial court erred in granting Akin Gump's special exceptions and abused its discretion in striking NationsBank's second supplemental petition.

■ Akin Gump asserts that any error of the trial court in sustaining the special exceptions is harmless because the jury returned a verdict of no negligence and no breach of fiduciary duty on the part of Akin Gump. This argument has no merit. The court improperly granted a summary judgment which disposed of NationsBank's claims for violations of the DTPA and for fraud; it then incorrectly struck NationsBank's pleadings with respect to the claims of Ginther/Operator. When NationsBank went to trial, the majority of its case had been eliminated. Under such circumstances, we refuse to hold that a jury's failure to find liability on the part of a defendant rectifies the errors of the trial court.

NationsBank's second point of error is sustained.

### THE CHARGE AND THE JUDGMENT

■ The trial court struck NationsBank's pleadings in which it attempted to assert causes of action on behalf of Ginther/Operator. Despite doing so, and over NationsBank's objection, the court included in the charge a definition of Ginther as operator.[9] The charge provided:

> The term "NOBLE C. GINTHER," means Noble C. Ginther in his individual capacity *and as operator of the Sarco Creek Field or in any other capacity.* It also includes all persons employed by Noble C. Ginther and Noble C. Ginther is responsible for the acts and omissions of such person when they are acting in the course and scope of their employment with Noble C. Ginther.
>
> The term "CLIENTS" means NOBLE C. GINTHER, any executor of the GINTHER ESTATE, and/or any trustee of the GINTHER TRUST.

(Emphasis added). In its fourth point of error, NationsBank claims it was error for

---

**9.** NationsBank properly preserved error on this point by submitting a definition of Ginther that excluded him in his capacity as operator.

the court to define Ginther in this manner because such definition was beyond the scope of the pleadings and was directly contrary to the court's striking NationsBank's second supplemental petition.

In its fifth point of error, NationsBank claims the trial court erred in rendering a final judgment against NationsBank that included the claims of Ginther/Operator. The judgment, which specified that it incorporated the charge, provided

> IT IS THEREFORE ORDERED by the Court that the Plaintiff, NationsBank of Texas, N.A., as Independent Executor of the Estate of Noble C. Ginther, Deceased, and Trustee for that Certain Trust Dated December 29, 1986, by Noble Ginther and Minnie Ginther take nothing from and against Defendants....

While the claims of Ginther/Operator are not specifically addressed in the judgment, it must be remembered that, upon Ginther's death, his claims and liabilities as operator of the Sarco Creek Field succeeded to his estate. Therefore, by the Court holding NationsBank, as executor of Ginther's estate, take nothing, it was also holding Akin Gump has no liability to Ginther in his capacity as operator.

■ The judgment of the court must conform with the pleadings. TEX.R. CIV. P. 301. A judgment which is not supported by the pleadings is erroneous. *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *Escamilla v. Estate of Escamilla*, 805 S.W.2d 886, 887 (Tex.App.—Corpus Christi 1991, no writ). In the present case, the trial court struck NationsBank's pleadings which attempted to assert the claims of Ginther/Operator. Thus, we find the court erred in defining Ginther to include his capacity as operator of the Sarco Creek Field and in entering a judgment that included the claims of Ginther/Operator against Akin Gump.

Points of error four and five are sustained.

10. Specifically, the jury awarded $717,218 as trial fees, $175,000 in appellate fees, and $56,000 in expert witness fees and expenses. The propriety of the $56,000 award will be addressed below.

ATTORNEY'S FEES AND EXPENSES

■ In response to NationsBank's malpractice action, Akin Gump filed a counterclaim in which it asserted NationsBank breached its contract for legal services by failing to pay Akin Gump's outstanding statement for services rendered in defending the CPX litigation. The jury awarded Akin Gump $211,690 for these outstanding fees. It also awarded Akin Gump an additional $948,218 in attorney's fees, which sum represented "a reasonable fee for the necessary services of Brin & Brin, P.C. in representing Akin Gump ... in this case." [10] In points of error six, seven, and eight, NationsBank asserts the evidence is legally and factually insufficient to support the jury's award of attorney's fees and that such award was excessive.

The rules of appellate procedure require this Court to remand the entire case unless "part is separable without unfairness." TEX. R.APP. P. 44.1(b). Akin Gump's entitlement to its "outstanding attorney's fees" of $211,-690 as well as Brin & Brin's fees of $948,218 in collecting the outstanding fees is wholly dependent upon the outcome of NationsBank's claims of legal negligence, fraud, breach of fiduciary duty, and violations of the DTPA. *See Arce v. Burrow*, 958 S.W.2d 239, 246 (Tex.App.—Houston [14th Dist.] 1998, writ granted) (holding breach of fiduciary duty may justify disgorgement of attorney's fees); *Morales v. Cline*, 202 S.W. 754, 757 (Tex.Civ.App.—1918, writ dism'd) (holding attorney's negligence may disentitle him to compensation for his services); *cf. Judwin Properties, Inc. v. Griggs and Harrison*, 911 S.W.2d 498, 507 (Tex.App.—Houston [1st Dist.] 1995, no writ) (noting that recovery of fees paid to attorney is proper measure of damages when services rendered are of no value).[11] Under the circumstances, it would be a travesty of justice to remand NationsBank's legal malpractice causes of action without remanding Akin Gump's claim for attorney's fees. Because we must remand the entire case to the trial court, we need not

11. We note that Akin Gump's attorney, George Brin, testified that the two cases were, in fact, inseparable.

address points six, seven, and eight. TEX. R.APP. P. 47.1.

NationsBank's ninth point of error asserts the trial court erred in rendering judgment for Akin Gump that included $56,000 in expert witness fees and other litigation expenses. Akin Gump properly concedes current case law supports NationsBank's position.[12] Accordingly, we sustain point of error nine.

### IMPROPER JURY ARGUMENT

 In its final point of error, NationsBank complains of the trial court's failure to grant its motion for new trial based on Akin Gump's counsel's improper jury argument and use of cartoons during closing argument. To complain about improper jury argument, it is necessary to show: (1) an error; (2) not invited or provoked; (3) that was preserved by proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial; (4) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the judge; and (5) that the argument by its nature, extent, and degree constituted reversibly harmful error. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex.1979); *Reviea v. Marine Drilling Co.*, 800 S.W.2d 252, 258 (Tex. App.—Corpus Christi 1990, writ denied). The appellant must show that the probability that appellee's final argument caused harm is greater than the probability that the verdict was grounded on proper proceedings and the evidence. *Rodriguez v. Universal Fastenings Corp.*, 777 S.W.2d 513, 519 (Tex.App.—Corpus Christi 1989, no writ).

To support its claims of negligence and fraud, NationsBank called attorney William Edwards as an expert witness. At the time of trial, Edwards was representing Conoco in the lawsuit filed against NationsBank in Harris County. Counsel for Akin Gump made this jury argument, which is the basis for NationsBank's complaint:

> But what is not okay is for someone to attempt to manipulate a jury, and that's not okay. And who I am talking about

right now, I think we all know, is really who is orchestrating this whole case, who manipulates you into doing his will for money, and that's Mr. Edwards.

> And so don't you think that it would be fair, if you are going to meet that burden of proof, whenever you put a witness on, that you are open about it? Mr. Edwards was called up here and if he had not been cross-examined, you would never have known; for all they brought before you was his answer in the case.

. . .

> And Mr. Edwards, who handpicked—for the purposes of orchestrating this affair—handpicked the Bank's lawyer. It is strange, isn't it? You do not have to be manipulated by Mr. Edwards in these questions.

. . .

> And again, you don't have to be manipulated by Bill Edwards if you don't want to be. You don't have to be a paw[n] in his game to get another two million dollars or whatever it is he thinks he can get out of this case.

. . .

> [A]nd therein lies what this lawsuit is about. And I told you at the beginning, it is about fear and greed. Fear of the Bank that they are going to get turned on by these people because this family is finding out, during the course of this lawsuit, that information that my client was giving to this Bank was totally ignored by the Bank. . . . And the Bank is using this lawsuit as a pass-the-buck vehicle and it is not fair; it is not right for them to do that.

. . .

> And why is that one and only witness, a man who has specifically talked to the lawyers in this case about using money from this case to pay him in the Harris County litigation. It is shameful, and there's absolutely no excuse for it.

---

12. *See King v. Acker*, 725 S.W.2d 750, 755 (Tex. App.—Houston [1st Dist.] 1987, no writ); *City of Houston v. Biggers*, 380 S.W.2d 700, 705, (Tex. Civ.App.—Houston 1964, writ ref'd n.r.e.), *cert. denied*, 380 U.S. 962, 85 S.Ct. 1105, 14 L.Ed.2d 153 (1965).

Lawyers don't make the facts, at least honest lawyers don't.

. . .

And who is the only expert witness called by this Bank who has the gall to get up here and testify that what they are complaining of was negligence and proximate cause? Bill Edwards. The man who told [them] what lawyer to hire, the man who talked specifically about them, with them about using money that they get in this case to pay him and comes in here and tries to pass himself off as an independent witness.

■■■ NationsBank failed to take any action at trial to preserve error. *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 333 (Tex. 1968); *Cecil v. T.M.E. Investments, Inc.*, 893 S.W.2d 38, 48 (Tex.App.—Corpus Christi 1994, no writ). NationsBank claims the argument was an incurable attack upon the integrity of its attorney. If so, an objection would not be necessary to preserve error. *Otis Elevator Co.*, 436 S.W.2d at 333. However, instances in which jury argument results in incurable harm are rare. *Standard Fire*, 584 S.W.2d at 840.

■■■ Attacks upon the integrity of opposing counsel are categorically prohibited. *Amelia's Automotive, Inc. v. Rodriguez*, 921 S.W.2d 767, 773 (Tex.App.—San Antonio 1996, no writ); *Circle Y of Yoakum v. Blevins*, 826 S.W.2d 753, 758 (Tex.App.— Texarkana 1992, writ denied). Akin Gump dismisses this prohibition by pointing out Edwards was not an opposing counsel, but an interested, expert witness whose credibility and motivation they were entitled to question.

While Akin Gump is correct in asserting its right to cross-examine Edwards, it misses the point of NationsBank's position. NationsBank is not arguing Edwards is its counsel, but that by attacking Edwards's tactics and involvement in the initiation of the suit, Akin Gump necessarily impugned the character and integrity of its counsel, James R. Harris and the firm of Harris & Thomas.

Thus, we conclude the issue is properly presented for our review.

■■■ However, we find no error. Edwards was not a disinterested witness. He agreed that if NationsBank was successful in this malpractice action, it was conceivable the money NationsBank received from Akin Gump would be available to settle the Harris County litigation. Admitted into evidence were notes made by Edwards of his conversation with attorney Jack McConn [13] in which he discussed his settlement demand of six million dollars and suggested a malpractice suit. Edwards never denied telling NationsBank he would settle with proceeds from the Akin Gump suit. He also admitted recommending to NationsBank that it consult Harris with respect to filing a malpractice suit against Akin Gump.

Edwards further testified concerning the amount of attorney's fees his firm had received in representing interests adverse to NationsBank and the Ginther entities. In the CPX litigation, in which he represented CPX against NationsBank, Conoco, and the other working interest owners of the Sarco Creek Field, Edwards received $582,000, plus an interest in the Sarco Creek Field which pays his firm between $15,000 and $20,000 per month.[14] As attorney for the Pintail Group in its suit against Conoco, Edwards's firm received a cash fee of $250,000, plus 1/3 of a $5 million agreed judgment. For his services in representing Conoco in the Harris County litigation, Edwards will receive 1/3 of any damages awarded. He did not receive any compensation from NationsBank as an expert witness fee.

■■■ Counsel is entitled to cross-examine a witness to determine the relationship between the witness and the party for whom he is testifying. In closing argument to the jury, counsel may refer to the adduced testimony and draw logical inferences from that testimony. *See generally, Russell v. Campbell*, 725 S.W.2d 739, 744 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (during

---

**13.** McConn is representing NationsBank in the Harris County litigation.

**14.** Edwards also has an individual interest in the Sarco Creek Field, which yields him between $8,000 and $9,000 per month in income.

closing argument counsel may discuss reasonableness and probative effect of the evidence). It is then the jury's function to evaluate the evidence in that context. *Standard Fire Ins. Co.*, 584 S.W.2d at 838 (whether by cross-examination or advocacy, the relationship between witnesses and a party is properly weighed, evaluated, and tested). Because Akin Gump's argument discussed facts and issues raised by the evidence, it was not improper. *Russell*, 725 S.W.2d at 744.

NationsBank also complains Akin Gump surreptitiously displayed to the jury cartoon posters of Edwards holding bags of money. The cartoons pejoratively depicted the amount of Edwards's attorney's fees received in the previous suits involving the Sarco Creek Field. NationsBank never objected to the display of the posters and did not bring its complaint about the display of the posters until it filed its motion for new trial. NationsBank's complaint comes too late and it is overruled. *See Rodriguez*, 777 S.W.2d at 519 (objection made the day after the jury began deliberating was insufficient to preserve error on the use of a chart).

We REVERSE the trial court's judgment awarding Akin Gump $56,000 in expert witness fees and other expenses and RENDER judgment that Akin Gump take nothing with regard to expert witness fees and expenses. The remainder of the trial court's judgment is REVERSED and REMANDED for a new trial consistent with this opinion.